Good morning. Good morning, Your Honors. I'm Terry Gross, Counsel for Appellant. I'd like to reserve five minutes for rebuttal. First, I'm going to address the claims involving Officer Crenshaw, and then I will address the claims against Officers Garens and Crowley. The District Court below found that Appellant presented a triable issue that he was subjected to criminal charges based on fabricated evidence, false evidence deliberately fabricated by Officer Crenshaw, which is the constitutional tort recognized in Devereaux. But then the District Court held that the prosecutor's independent judgment in filing charges broke the chain of causation, applying the doctrine from Smitty. However, Smitty and all of its progeny explicitly state that the doctrine only involves claims in which an element is the lack of probable cause at the time of filing charges. In fact, the Court's rationale in Smitty is explicitly founded on probable cause, that it's unfair to hold an officer who mistakenly believes there's probable cause subject to enhanced liability if a law-trained prosecutor is also mistaken about probable cause. And then this Court a few months ago in Spencer v. Peters interpreted Devereaux, and it made clear in that opinion that probable cause is not an element of a fabrication of evidence claim, despite the fact that the State had claimed that it was. So therefore, a Spencer requires reversal as to Officer Crenshaw, since the Smitty presumption simply cannot apply to a fabrication of evidence claim like the one at issue here, one that is unrelated, because this fabrication of evidence claim is unrelated to any issue of probable cause. The sole cases that the City cites for its argument that Smitty is not limited to claims based on the lack of probable cause are Beck and McSherry. Neither supports this claim. You know, Beck was only discussing Fourth Amendment cases based on lack of probable cause, and it made this clear in its statement that it only applied to constitutional torts in which a lack of probable cause was at issue. So that leaves only McSherry. But the City concedes in McSherry, and I quote here, it is unclear from McSherry whether the Court applied Smitty to the fabrication claim. Well, given that concession, and I'm going to cite a case that was not in our record, but we've submitted additional authority, given that concession, Judge Teshima's opinion in Morales-Garcia v. Holder, 567 F3rd 1058, controls, which provides that unstated assumptions on non-litigated issues, which is issues that are not raised or discussed, are not precedential. So in McSherry, the Court never stated that it was applying the Smitty presumption to a separate fabrication of evidence claim unrelated to a lack of probable cause. In fact, every time the McSherry Court mentioned any issue about fabrication of evidence, it was within a discussion of stating in the context of discussing the existence of probable cause. So therefore, it's Spencer that controls and not McSherry. Now, even if the presumption would apply, Caldwell's evidence was sufficient to rebut the presumption. Now, first, Smitty and all its progeny refer to the fact that the presumption is based on the prosecutor's knowledge at the time of filing charges. And they say this over and over again, Smitty 1, Smitty 2, every other case they talk about, the decision to file charges. The city's only argument to, you know, to counter this overwhelming showing is once again McSherry. And what they say is, well, the prosecutor, you know, supposedly conducted interviews of witnesses subject to the charging decision. But that, in fact, is pure conjecture. Nowhere in the district attorney's declaration that's quoted in the McSherry opinion does he state anywhere that he interviewed witnesses subject to his charging decision. There are no dates provided there. In fact, nowhere in the McSherry opinion does the Court state or discuss that it was in fact the McSherry court repeatedly refers to whether, you know, evidence, including fabrication of evidence about the fabrication of evidence, influenced the prosecutor's decision to file charges. They say that over and over again. And also nowhere in the McSherry opinion does it state that McSherry, you know, the plaintiff, you know, in that case, argued that post-charging decisions by the prosecutor were irrelevant to the presumption. So once again, Morales-Garcia controls. An issue that's not raised by the parties and not discussed by the courts cannot be precedent. And therefore, we're back to what every other case, you know, in the Smitty and its progeny State, which is the prosecutor's knowledge at the time of filing charges. Well, at some point the prosecutor here, looking at his declaration, does seem to have taken this independent assessment of some of the evidence and made this decision to go forward after understanding, in his view, that there was this encounter at the door. At that point, does his independent assessment and independent decision to go forward with knowledge of the facts that concern you, does the causation stop at that point? And is your case limited to damages that your client may have suffered by virtue of being wrongfully charged but not wrongfully convicted or put on trial? There has been no case that says, subsequent to the charging decision, if the prosecutor then later becomes aware of stuff and still decides to go forward, that this presumption applies to cut off any liability. I'm not talking necessarily about this particular presumption, but just under basic principles of causation, if the prosecutor in this case, in fact, made an independent decision knowing all of the facts that concern you here, and he made that decision before actually presenting the case to the trial, how could the alleged wrong here by Crenshaw have caused a wrongful conviction or wrongful incarceration? All the cases that discuss this doctrine look at it as, you know, sort of as an evidentiary or pleading kind of doctrine. Even Hartman, the Supreme Court case that applied it in a retaliatory prosecution case, is trying to look at this, at the doctrine of the prosecutor's independent judgment, you know, not as something that continues on and on, but we're trying to find some bright-line rule that allows us, you know, to make some sort of decision on causation here. And so to continue to look at, you know, now when we're talking about, you know, a charging decision which will take place, you know, presumably shortly after an arrest, it makes sense to have this kind of bright-line rule. But then to have it go on and, you know, to have this kind of causation issue go on and on to cut it off, what it actually does is it substitutes the prosecutor's jury as to whether there was a constitutional violation that occurred. Well, except, you know, to me there's several distinct stages in the criminal process where you might say, you know, you could cut off further damage. In other words, it's a violation of the Constitution to charge somebody with a crime on the basis of a fabricated evidence. I think it's also probably a separate violation to, you know, go ahead with either a, you know, grand jury hearing or a preliminary hearing that's conducted on the basis of fabricated evidence. I mean, that's a separate violation. And then it's a separate violation to convict somebody on the basis of a fabricated evidence. And so, you see, for instance, in this case, the prosecutor's affidavit was not made until the time of the preliminary hearing. So if you infer that, then, you know, whatever he says in the affidavit does not apply at the time of the initial charge, but applies at the time he filed that affidavit at the preliminary hearing, then his only violation is, you know, to be charged with the crime on the basis of the fabricated evidence. And then it's all cut off. If you think the prosecutor's affidavit is sufficient, it's cut off at the time of the preliminary hearing, isn't it? Well, this Court would be making new law to make that determination, because there's no case that has ever done that before, that has cut off, you know, a claim of a constitutional violation because the prosecutor made a judgment at some later time other than, as in Smitty, at the charging decision. In fact, a lot of, in this case, in the DA's declaration and what the district court relied on, a lot of this was even at trial. He talks about even at trial was when I heard this evidence and I still decided to go forward. And so if this Court was to make that kind of rule, that would effectively substitute the prosecutor's judgment for the jury's judgment, and we submit that that's improper. You know, I would like to go forward with respect to Gerens and Crowley or the other things, but I'm at the limit of my time. Good morning, Your Honors. May it please the Court. My name is Sean Connolly, city attorney, deputy city attorney of San Francisco on behalf of defendant and appellees. There is a constitutional right not to be charged with a crime based on deliberately fabricated evidence. There is no constitutional right to have a criminal investigation conducted in a particular manner. And plaintiff's case today is essentially that, is a complaint about how this murder investigation was conducted. And while it's easy to scrutinize an investigation for errors 27 years after the fact, plaintiff's claims here of fabrication fail in the matter of law. The trial court correctly granted defendant's motion for summary judgment. Plaintiff argues that a brief handwritten note drafted by Sergeant Crenshaw during the murder investigation is evidence of fabrication. And the parties agree that Sergeant Crenshaw some days after the murder had a brief conversation with plaintiff in the back of a police car and that Sergeant Crenshaw summarized that note in about four sentences and forwarded that note to the homicide file for the homicide investigators who would have been assigned the case. Plaintiff argues that that handwritten note is fabrication of a due process proportion because the note does not accurately reflect what he now says he told Sergeant Crenshaw. That particular claim fails as a matter of law for three reasons. One, the note is not a fabrication. Can I ask just a preliminary question? I don't necessarily understand plaintiff's claim to be that any particular piece of evidence standing alone makes the fabrication claim. But the universe of conduct by Crenshaw, it wasn't just the note. It's the note when seen in conjunction with the show-up, you take it together. This was a collective fabrication. I don't know exactly what plaintiff's argument is. I know they've argued the note separately is a fabrication, and I know that they have tried to tie the note to this door interaction. In the long run, it doesn't matter because it's immaterial. The prosecutor looked at the note, considered the note, and found it inconsequential. The note, to the extent it was relied on by the investigators, was relied on for the simple fact that the note said, consistent with what plaintiff testified to, that he was at the scene of the murder shortly after it occurred. The note doesn't say shortly after. The note says I was up the street and came after the shooting. I think the note says Maurice Caldwell stated that he was present at the shooting. I don't recall Mr. Caldwell saying anything of the sort that he – Well, I think that's the first half of that sentence. And the note says, comma, but he was down the street prior to the shooting. So that is consistent essentially with what Caldwell maintains to this day. As I said, the note is not a fabrication because it's not inconsistent with what he says. Hold on. At least as I read that sentence, he says, before the shooting I was down the street, but during the shooting I was present. I don't see that. I'm sorry. I don't think, in any case, I don't think, however the note was interpreted, it was not interpreted by Sergeant Crenshaw or the inspectors as putting Caldwell at the scene of the murder at the time the murder occurred. I think it is agreed that it put Caldwell at the murder shortly after the initial shots were fired, which is consistent, of course, with what the eyewitness said and what the other witnesses said. That's the only import of the note. But, again, it wasn't material. The note is pretty specific. So I'm looking at the actual handwritten note. Maurice Caldwell states that he was present at the shooting, but he was down the street. Prior to the shooting, Caldwell was with the suspects dealing drugs. That puts him pretty squarely into this thing. I mean, whatever you want to say was present at the shooting, but he was down the street, might indicate some leeway. But if he was present with the drug transaction, that puts him there prior to the shooting. Okay. I think it's ambiguous enough to be interpreted in different ways. But what's important is the inspectors interpreted it as Caldwell saying he was not present at the initial shooting, but was present shortly after. And that's in the record in multiple places and was argued at trial. And because, of course, the shooting sort of took place in two parts. There was two shooters. There was an initial round of shots from a handgun, and then several seconds later, a second shooter with a shotgun. And Caldwell was the second shooter. The note's not material because it didn't implicate him in the murder. Now, we've discussed this a little bit, and there's a little, I guess, an issue of interpretation, but at least the no one from the homicide investigation side interpreted this as direct incrimination, that Caldwell had said something to Crenshaw admitting to a murder. And the note in no other way implicated him in that crime, at least not the crime of homicide. Lastly, the note, as I said, was not relied upon. It was not relied upon by the prosecutor or the police to drive this investigation. The thing that was driving this investigation was the tip about Maurice Caldwell and, of course, a very reliable and credible eyewitness who saw the entire homicide firsthand from close distance. Plaintiffs also rely on this interaction at the front door. Plaintiff argues that Sergeant Crenshaw brought Maurice Caldwell to the front door of a potential witness during a routine canvas at the scene of the murder some days later, 13 days later. Of course, we credit plaintiff's version of this event. And even crediting plaintiff's version of the event, there was nothing inherently suggestive about the circumstances of that interaction that would have made this identification unreliable. For instance, one, Sergeant Crenshaw at the time was not in uniform. He was in plain clothes. He did not have a star displayed. According to Caldwell, his gun was not displayed, according to the plaintiff. But the critical things are that Caldwell says that Cobb saw him. Correct. And that's disputed. Caldwell says that Crenshaw referred to him as Twan. Correct. And that's disputed. But if those things are true, if Cobb saw him and he was identified as Twan and Caldwell and Crenshaw says, I've got him, that tends to go against the testimony that Cobb gave initially, that she had no idea who the guy was. She had never seen him before, despite the fact that Twan lived next door to her and had lived next door to her for months. He says he didn't really speak to her, but she later comes up with the name Twan when the first time she says, I don't know who it was, never seen him before around here. And it turns out he lives next door to her, and she later identifies him by name as Twan. Those things don't really add up very well. Let me address that, please. So, first of all, I don't think there was no statement attributed to Sergeant Caldwell that said, I got him. The statement that Caldwell attributes to Crenshaw is, this is Maurice Caldwell, Twan, can I have the card keys? And Maurice Caldwell, by his own testimony, says he was only in the presence of this witness for 20 seconds. Those questions that the Court asked were asked of Mary Cobb, the witness at trial. And what she said was the following things. She said, one, at the time I was describing the incident to the inspector, I didn't – I wasn't – I know who the shooter was, but I wasn't sure of his name. And I didn't want to say a name at that point and end up pointing the finger at the wrong person. Two, she explained that she learned the name Twan from her children. Of course, her children had been threatened after the murder, after she had began cooperating. And she had discussions with her kids about it. That's where she learned the name Twan. Maurice Caldwell was not a resident of the Alamany Projects. So, counsel, I'm a little – I'm a little confused by what you just told me, because I am looking now at the transcript of her discussion with the officers. This is the July 13th interview with Mary Cobb. And she tells them, do the fellows live around here? No, they don't live around here. And you've lived here long? Yeah, I've lived here 8 years. Right. And so what – Maurice Caldwell was not a resident of the Alamany Projects. He had lived from time to time with a woman who lived next door to Mary Cobb's. He also – even at the time he was interviewed there, he was interviewed at his mother's house, which is on a different – in a different part of town. And it was a place, he said, he lived from time to time. He also said he lived with his – another girlfriend, Adrena Gray, out in Daly City. He also said during that period of time he lived at a hotel. You know, what you're doing is contrary to some adjoining judgment practice. You're drawing all the inferences against the plaintiff. Well, I'm trying to explain why Mary Cobb's may have said – I'm trying to answer this question, this particular question, why Mary Cobb's wasn't sure. I think, Judge, my point is that, well, the witness, Cobb, made two very different statements, and you're trying to explain the difference. Well, isn't that for the jury to do? Yes, but it's – here it's immaterial, ultimately. And I think the district – It's what? It's immaterial, ultimately. This identification – For instance, you know, there's the other part about, well, she knew his nickname, which is strange for somebody she had never seen before, right, didn't know who he was. I mean, there are contradictions in her, you know, two statements. The record was – you know, the record was – included her trial testimony, of course. And I think that's explained in her testimony when she's asked those questions. And it's also explained in other parts of the same record, the same record the district court looked at, in that Carl actually gave – had several addresses, and he had inconsistent answers as to where he lived at certain times. So Mary Cobbs is like, well, I've seen him around the neighborhood. And, you know, she also explained that she had been relocated from up the street to the apartment she was in at the time of the murder months before. I don't think that there's – as any big surprise, she wasn't exactly clear where he lived or if he was a neighbor or not. The movie – I want to finish my discussion about this Doerr interaction. Plaintiff has framed this as a Devereux claim under the coercive and abusive investigation tactic prong. And the problem is, one, as a matter of law, this particular conduct is not coercive or abusive. Two, there is no case – there was no case then, there's no case now that would have put a reasonable police officer on notice that that Doerr interaction would have been unconstitutional. There are no Devereux cases that address a suggestive Doerr or suggestive out-of-court identification. The only cases that address that and lend any help to this discussion are the Manson Biggers line of cases. And we cited a bunch of cases in that brief that have many examples of single witness or sort of egregious or bad conduct identification cases. And what Manson Biggers and those line of cases said when you – all these ID procedures are inherently suggestive, some more so than others. But the issue is not whether it's suggestive. The issue is, you know, is it still reliable? And it has to be understood in the context of other factors, such as, you know, did the witness have an opportunity to see the crime and see the suspect at the time of the crime, the witness's attention to detail, the accuracy of the descriptions, the certainty of the identifications. There are many factors. Those factors, when you look at Mary Cobbs and her description of the event and her position at the time of the event and the fact that she made crucial descriptive details before any alleged misconduct in this case occurred that ultimately led to plaintiff's conviction, that identification, even if it had been challenged at the trial, would have been admitted. And there's nothing about it that would have put the officers on notice that it was some sort of constitutional violation. I just want to address in the last few moments I have that some of the things that plaintiff is arguing about causation. Plaintiff is asking, especially for a very tortured reading of McSherry. This is not a presumption case. It's an intervention case. This case is just like McSherry in the sense that in McSherry there are the same allegations were made. There was an allegation that a police report that was fabricated by an officer was used against the defendant. There was an allegation that there were improper identification procedures. This case like McSherry and this case more so, the prosecutor said, I looked at all the evidence. I interviewed all the witnesses. I was aware of the things that plaintiff has now claimed were misconduct. I found the evidence lawful, reliable. And when the prosecutor made that decision, the prosecutor broke the chain of causation. The prosecutor broke the chain of causation. There's nothing about the alleged constitutional harm that plaintiff complains of that was cause for his conviction, because the prosecutor, the intervening and superseding cause, broke that chain. It's a plain reading of McSherry. It doesn't need to be tortured. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. Gross, you've got time remaining. First, I think it's very clear that the notion that the defendant is guilty of the offense, in the case that I just described, did have statements of Caldwell that made them more incriminating. As the court has pointed out, it placed him at the scene. It's completely the statements attributed by Crenshaw completely contradicted what Caldwell had told the officers in the two times he was interviewed by them, which was that he was in an apartment with a girlfriend at the time. You went on that below. Why does it matter? I mean, that's the city's kind of rejoinder. Even if the note is inaccurate, it played, according to the city, no harm, no foul. It didn't end up hurting your person. Well, but, I mean, if this is a causation argument, it did. In fact, we have all Gerens and Crowley and the district attorney all say they looked at that note and they saw the inconsistencies and that's what they relied on. The inspector said that's what we relied on in deciding to focus on him, is that, you know, he – that that's an incriminating statement, but it completely contradicts what he told us. The district attorney said, I looked at that and I considered that inconsistency. And, in fact, this is to go to the question, Your Honor, that you had earlier about causation, the issue of whether this note was fabricated did not become aware to the district attorney at any time prior to trial. There was, you know, incompetent counsel, you know, that the – as the district court had found. He never raised this issue. The issue about the fabricated note only came up during the habeas proceedings decades later. So that – so that basically this note was one of the critical things that caused the officers to focus on him and to, you know, the charges ultimately to be filed. But the focus on – didn't cause the charges. The prosecutor made the charging decision, and isn't his affidavit that the note was fabricated? So now I think you're talking about the prosecutor's independent judgment standard rather than a pure causation standard. And in that case, the district attorney said, I decided, I looked at that and I considered that inconsistency. He didn't say, I didn't pay any attention. He said, I considered the inconsistency in deciding to file charges. Okay. And as I've pointed out, he never found out – it was never that he could have found out during, you know, at any time, even all the way up to and during trial that the note was fabricated, because that was never raised. But didn't he also say it was minor and really didn't make a difference? He said that he thought the note itself was minor. You know, that's what he said. I thought the note was minor, so I didn't put it in evidence. But that doesn't mean that if he had known that it was fabricated of what he would have done or how he would have viewed things. And he wasn't even aware of that. And this is exactly what the, you know, the exceptions to the rebuttal to the Smitty standard is, if you can show that the officers withheld information from the prosecutor so he couldn't have made an independent judgment. And that's what, you know, what happened here. The real issue is, did the fabricated note cause him to be charged, tried and convicted? And we have a summary, as Your Honor has pointed out, it's a summary judgment standard here. And we have all of these disputed issues of fact about the note or whether it influenced the district attorney, and that makes this a triable issue under the statute. Kennedy, in your response to Mr. Connolly's, I think, closing comment that this case is just like McSherry. Well, it's not like McSherry in quite a number of ways. Well, why, if we're talking about, I think he's saying it's like McSherry in applying the Smitty presumption. But where it's not is in the, in this case, we do not have a false arrest claim. We do not have any claim that's based on a lack of probable cause. In McSherry, there was a claim like that. In McSherry, there was a claim that there was some fabrication, but when the court was discussing that, it was discussing it only within, every time it discussed it, it discussed it within whether there was probable cause. It never said we're standing back, you know, we're just looking at a separate claim for fabrication of evidence, you know, that's unrelated to probable cause, and we are going to apply the Smitty presumption to that. It basically lumped it all together. That issue was never raised of whether the Smitty presumption could apply to a separate claim for fabrication of evidence. The Long Beach, if you, the Court can take judicial notice of the, you know, of the briefs below.  It was once a prosecutor issues his charging decision, an exercise independent judgment on issuing his charging decision, that cuts off all liability for the officers. That's all that they said. They didn't say, you know, anything about something that happened afterwards. They just said it cuts off all liability. And so this issue of whether, of whether the Smitty presumption could be extended to causes of action that have nothing to do with a lack of probable cause was never raised or decided in the McSherry case, and that makes this completely different. You've exceeded your time, counsel. You're over your time. Okay. Thank you. Thank you very much. We thank counsel for the argument. The call to order for the City and County of San Francisco is submitted.
judges: Tashima, Bybee, Leitman